UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTHINA TAYLOR,<br><br>      Plaintiff,<br><br>  v.<br><br>NORTHERN INYO HOSPITAL, et al.,<br><br>      Defendants. | Case No.: 1:15-cv-001607 - LJO - JLT<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO STRIKE<br><br>(Doc. 25) |

      Marthina Taylor seeks to strike Defendants' designation of Dr. James Rosenberg as a rebuttal expert. (Doc. 25) Plaintiff contends the designation of Dr. Rosenberg should be stricken because it is an improper supplemental[1] designation, and he does not simply rebut the opinions of Plaintiff's expert. On the other hand, Defendants contend the designation complies with the Federal Rules of Civil Procedure. (*See id.*)

      The Court concludes that Defendants' designation of Dr. Rosenberg offers new theories and opinions and does limit his report only to rebutting the opinions of Plaintiff's expert. However, because the failure to comply with Rule 26 appears harmless, Plaintiff's motion to strike is **GRANTED IN PART** and **DENIED IN PART**.

---

[1] Though the parties use the term "supplemental," there is no such thing as a "supplemental expert designation." Rather there is the original, affirmative designation and, if deemed necessary, the parties may designate a "rebuttal" expert. The only supplementation allowed by the Rule is in contexts where the Rule permits or requires the expert to supplement the expert's report.

1

## I.     Background

Taylor asserts she was employed by Defendants as a baker at Northern Inyo Hospital, beginning in 1990.  (Doc. 13 at 4, ¶ 11)  She contends that in February 2013, Barbara Higginbotham began working as dietary directo and became Plaintiff's supervisor.  (*Id.*, ¶ 12)  According to Plaintiff, she "began to experience issues with Ms. Higginbotham around November 2013 after [Plaintiff] brought to Ms. Higginbotham's attention work being done out of policy, passed expiration dates, hair nets and handwashing policy." (*Id.*)  Plaintiff contends that Ms. Higginbotham's "attitude and disposition" toward Plaintiff "changed drastically," and other employees were told not to help Plaintiff with her job duties.  (*Id.*)

In May 2014, Plaintiff took medical leave to have a surgery.  (Doc. 13 at 4, ¶ 13)  Plaintiff alleges that before taking the leave, she was informed by Ms. Higginbotham that if Plaintiff had work restrictions upon her return, it "would be a problem." (*Id.*)  Plaintiff alleges that when she returned from leave in September 2014, she asked for the work to be lightened but no changes were made.  (*Id.*, ¶¶14-15)  Plaintiff contends that she was singled out and expected to do duties not required of others. (*Id.*, ¶ 15)

On October 6, 2014, Plaintiff "filed a grievance against Ms. Higginbotham for harassment, discrimination, and working out of policy." (Doc. 13 at 5, ¶ 16)  Plaintiff asserts that approximately a week later, her injury "re-occurred due to not being accommodated with a lighter workload." (*Id.*, ¶ 17)  She reports that she followed up with a physician on October 22, "and was cleared to return to work as of October 27, 2014 with a 10lb weight limit and to rest every 45 minutes." (*Id.*)

Plaintiff alleges she had a meeting with Ms. Higginbotham and Leo Freis, the Chief Operating Officer, on October 27, 2014 "to discuss her restrictions and what could be changed to accommodate her restrictions." (Doc. 13 at 5, ¶ 18)  During the meeting, she received "a list of duty changes," and began working the next day assuming duties "defined by [the] job description and the newly revised list." (*Id.*)  She reports that at 10:30 a.m. on her first day back, she informed her supervisors "that the changes implemented were set up to fail and were not do-able in the time allotment provided," and "asked if other employees could help/assist in completing some of these job duties, so [Plaintiff] could concentrate on all of her baking duties." (*Id.*)  Plaintiff contends that Mr. Freis informed Plaintiff he

"would have to confer with higher up management to make this call." (*Id.*) Ten minutes later, Plaintiff "was told that Northern Inyo Hospital could not make accommodations to meet [her] restrictions." (*Id.*) Plaintiff was told that "she would be separated from her position until her final doctor appointment until November 7, 2014," and "if her doctor confirmed any limitations or restrictions, that she would be separated from her position [permanently]." (*Id.*) If the doctor did not indicate the limitation continued, the Plaintiff could resume her normal job duties." (*Id.*)

Plaintiff alleges the physician "confirmed the temporary 10 lb weight restriction." (Doc. 13 at 5, ¶ 19) On November 19, 2014, she sent a letter to the human resource department, in which she "requested from Northern Inyo Hospital that they engage in an interactive good faith process to find reasonable work restrictions/accommodations for her situation." (*Id.* at 5-6, ¶19) Plaintiff asserts she "also explained that she had asked before for accommodations and either did not hear back or was given additional work duties that set her up to fail, and that her supervisor had indicated she needed to return to work without restrictions otherwise it would be a problem." (*Id.* at 6, ¶ 19) However, Plaintiff received a letter stating the hospital "cannot accommodate [the] limitation" and she was being separated from her employment. (*Id.*, ¶ 20)

On October 21, 2015, Plaintiff initiated this action by filing a complaint against Defendants. (Doc. 1) Plaintiff contends Defendants are liable for disability discrimination, failure to accommodate, failure to engage in the interactive process, retaliation, wrongful termination, and violations of the Family and Medical Leave Act and California Family Rights Act. (*See generally* Doc. 13)

The Court held a conference with the parties on February 9, 2016, and issued an order setting forth the deadlines governing the action on the same date. (Doc. 17) The parties were "directed to disclose all expert witnesses, in writing, on or before November 28, 2016, and to disclose all rebuttal experts on or before December 19, 2016." (*Id.* at 3, footnote and emphasis omitted) The Court informed the parties: "The written designation of retained and non-retained experts shall **be made pursuant to Fed. R. Civ. P. Rule 26(a)(2), (A), (B), and (C) and shall include all information required thereunder**. Failure to designate experts in compliance with this order may result in the Court excluding the testimony or other evidence offered through such experts that are not disclosed pursuant to this order." (*Id.*, emphasis in original)

3

On December 5, 2016, counsel for the parties had a telephone conference regarding a mental examination. (Doc. 25-1 at 2) Prior to December 5, "when it became clear that Plaintiff sought more than mere "garden variety" emotional distress damages, Plaintiff agreed to submit to a mental examination conducted by Dr. James Rosenberg, a psychiatrist retained by Defendants." (*Id.*) Defendants' counsel inquired whether Plaintiff still planned to appear for the examination, and Plaintiff's counsel, Martin Aarons, reported an expert designation had not been received. (*Id.*) Counsel responded that an expert designation was provided, but "conceded that regardless of their respective positions regarding service of the Rule 26 designation, Dr. Rosenberg had not completed his examination of Plaintiff and that they would likely designate Dr. Rosenberg as a rebuttal witness." (*Id.*) Mr. Aarons reports he asked for the expert designation to be emailed, but it was not. (Doc. 25-2 at 2, Aarons Decl. ¶ 2) According to Mr. Aarons, he received the designation in the mail on December 7, 2016, "with the postage meter date stamp removed." (*Id.*)

On December 16, 2016, Mr. Aarons sent a letter to Defendant's counsel, Andrea Douglas, in which he asserted the designation was improper, and requested withdrawal of the expert. (Doc. 25-2 at 10; *see also* Doc. 25-1 at 2) The same date, Ms. Douglas informed Mr. Aarons "that the expert was being withdrawn, but he may still be designated as a rebuttal expert." (Doc. 25-1 at 2)

On December 19, 2016, Defendants identified Dr. Rosenberg as a rebuttal expert. (Doc. 25-1 at 3) The designation did not include a list of matters in which Dr. Rosenberg previously testified. (*Id.* at 12) However, the list was provided on January 3, and Plaintiff deposed Dr. Rosenberg on January 12, 2017. (*Id.* at 12-13) Plaintiff now seeks to strike Dr. Rosenberg, arguing he is not a proper rebuttal expert.

**II.    Expert Disclosures**

Rule 26 of the Federal Rules of Civil Procedure provides that parties are required to disclose the identity of any expert witness who will present evidence under Federal Rule of Evidence 702, 703, or 705; and most expert disclosures must be accompanied by a written report. *See* Fed. R. Civ. P. 26(a)(2)(A)-(B). The parties are required to "make disclosures at the times and in the sequence the court orders." Fed. R. Civ. P. 26(a)(2)(D); *see also Goodman v. Staples The Office Superstore*, 644 F.3d 817, 827 (9th Cir. 2011).

The Federal Rules of Civil Procedure distinguish between rebuttal expert disclosures and supplemental disclosures. Rebuttal expert disclosures are proper when the parties seek to present evidence "intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2) (B) or (C)." Fed. R. Civ. P. 26(a)(2)(D). Thus a proper rebuttal opinion is limited to contradicting or rebutting an opinion set forth in the opponent's initial expert disclosure. *See Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320, 324 (5th Cir. 1998) ("The purpose of rebuttal and supplementary disclosures is just that — to [rebut and to] supplement. Such disclosures are not intended to provide an extension of the expert designation and report production deadline."). The phrase "same subject matter" should not be read broadly, because if it were "to encompass any possible topic that relates to the subject matter at issue," such interpretation "will blur the distinction between 'affirmative expert' and 'rebuttal expert'" and have unjust results. *Vu v. McNeil-PPC, Inc.*, 2010 U.S. Dist. LEXIS 53639 at *7-8 (C.D. Cal. May 7, 2010).

In addition, a party is required to "supplement" its expert reports to reflect any new information discovered after the report's initial disclosure. Fed. R. Civ. P. 26(a)(2)(E) & 26(e)(2). "[D]esignation of 'supplemental' experts[, therefore,] is an ongoing obligation of the parties to correct earlier opinions disclosed by an expert. It does not refer to the disclosure of a new expert" once the court-ordered deadline for simultaneous initial disclosure of experts has expired. *United States v. Southern Cal. Edison Co.*, 2005 U.S. Dist. LEXIS 24592, at *8 (E.D. Cal. Sept. 23, 2005) (quoting *Hampton v. Schimpff*, 188 F.R.D. 589, 590 (D. Mont. 1999)).

If a party fails to timely disclose its expert witnesses in a manner prescribed by the court, the party is not allowed to use that witness to supply evidence, unless the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1). Rule 37(c)(1) "gives teeth" to the disclosure requirements of Rule 26(a)(2)(A). *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Exclusion of improperly disclosed expert witnesses is "self-executing . . . and automatic to provide a strong inducement for disclosure of material . . ." *Id.* at 1106 (citations and internal quotation marks omitted). Thus, the burden falls on the party facing the sanction to demonstrate that its expert witness should not be excluded under Rule 37(c)(1). *Id.* at 1107; *see also Torres v. City of Los Angeles*, 548 F.3d 1197, 1213 (9th Cir. 2008).

## IV. Discussion and Analysis

### A. Whether designation is supplemental or rebuttal

Plaintiff argues that Defendants are "playing fast and loose with the FRCP," with the designation of Dr. Rosenberg as an expert. (Doc. 25-1 at 4, emphasis omitted) Plaintiff observes that Defendant initially designated Dr. Rosenberg as an expert, but "[t]he designation did not include a report, cv, rate sheet, or list of testimony as required." (*Id.* at 5) Given the deficiencies of the designation, Plaintiff's counsel "sent a letter requesting that Defendant withdraw its expert" on December 16, 2016, (*Id.*) Though Dr. Rosenberg was withdrawn as an expert, he was re-designated as a rebuttal expert on December 19, 2016, and this designation included a report. (*Id.*) Plaintiff concludes the designation "is really a supplemental designation disguised as rebuttal." (*Id.* at 5)

On the other hand, Defendants contend Dr. Rosenberg is a proper rebuttal expert. (Doc. 25-1 at 13) Defendants observe:

> Per the rebuttal designation, Defendants advised Plaintiff that Dr. Rosenberg's testimony would be limited to "rebut any opinions provided by Plaintiff's expert Dr. Anthony E. Reading and to testify about Plaintiff's mental and emotional status; Plaintiff's claims of psychiatric and/or psychological injuries; Plaintiff's psychiatric and/or psychological disorders, conditions, and diagnoses existing prior to and subsequent to the subject incident; the need if any, for Plaintiff to receive treatment; the adequacy and reasonableness of Plaintiff's treatment to date; and other psychiatric and neuropsychiatric issues and related issues regarding causation and damages.

(*Id.*) In addition, Defendants note that Dr. Rosenberg stated he had not personally examined Plaintiff and "it would be not appropriate from any ethical or scientific standpoint to offer [his] own independent psychiatric diagnosis, if any, in the manner that [he] would following a face-to-face clinical or forensic examination." (*Id.*, quoting Doc. 25-2 at 37)

Significantly, because Defendants withdrew Dr. Rosenberg as an expert, there was not a disclosure for them to *supplement* by adding a report or CV, or any other new information that was previously omitted from the designation. *See* Fed. R. Civ. P. 26(a)(2)(E) & 26(e)(2). Rather, the withdrawal terminated that disclosure. In addition, Defendants informed Plaintiff that the testimony was intended to "rebut any opinions provided by Plaintiff's expert." (Doc. 25-1 at 13) Consequently, the designation of Dr. Rosenberg is best characterized as a rebuttal.

///

**B.     Whether the rebuttal was proper**

Plaintiff contends that even if the Court finds Dr. Rosenberg is a rebuttal expert, the report is improper because it includes "new opinions, is inadequate and not complete." (Doc. 25-1 at 7, emphasis omitted)  Plaintiff argues Dr. Rosenberg offers "his own new/affirmative opinion regarding whether or not Ms. Taylor has major depressive disorder and his own new opinion on the source and causes of Ms. Taylors (sic) major depressive disorder." (*Id.* at 9)  In addition, Plaintiff asserts that Dr. Rosenberg offers his "own new opinion about the causation of the diagnoses of major depressive disorder that diagnoses and his own opinion about future treatment for that diagnoses," as well as "whether or not Ms. Taylor has an emotional injury at all from a psychiatric standpoint." (*Id.*)

Specifically, in the report, Dr. Rosenberg makes statements such as Dr. Reading failed to take into account general medical condition, and that for Plaintiff "relevant medical conditions include her thyroid status, history of vitamin D deficiency and psoriasis, an inflammatory auto-immune disorder strongly associated with depressive symptoms." (Doc. 26-2 at 38)  In addition, Dr. Rosenberg asserts that "Dr. Reading has failed to take into account… relevant substance-related factors," and in Plaintiff's case, "relevant substance-related factors include whether she continues to take DHEA, an over-the-counter or prescription estrogen replacement, high-potency topical steroids for her psoriasis, and her use of medical marijuana one to two times a day." (*Id.*)  Dr. Rosenberg also makes statements concluding the extent of Plaintiff's anxiety and depression, and suggests there is "the possibility of a Bipolar Disorder variant, unrelated to this case." (*Id.*)

A thorough review of the report indicates that Dr. Rosenberg injects his own, affirmative opinions throughout the document, rather than merely criticizing those of Dr. Reading.  Further, as Plaintiff asserts and Dr. Rosenberg admitted at his deposition, the report "leaves out bases and reasons for his testimony." (Doc. 25-1 at 11)  Because the report clearly goes beyond contradicting or rebutting the opinion set forth by Plaintiff's expert, much of it is not proper under Rule 26(a)(2)(D). *See Metro Ford Truck Sales, Inc.*, 145 F.3d at 324.

**C.     Rule 37 Factors**

Defendants erred by providing the list of matters in which Dr. Rosenberg testified beyond the deadline and the inclusion of improper, affirmative opinions in the report.  Likewise, the report itself

7

fails to list down all facts upon which Dr. Roseberg relies to support his opinions (Fed. R. Civ. P. 26(a)(2)(B)(ii), (iii).. To determine whether these errors are harmless[2], a court may consider: "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure that prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Lanard Toys, Ltd. v. Novelty, Inc.*, 375 Fed. App'x. 705, 713 (9th Cir. 2010) (citing *David v. Caterpillar, Inc*., 324 F.3d 851, 857 (7th Cir. 2003)). *See Woodworker's Supply, Inc. v. Principal Mutual Life Ins. Co*., 170 F.3d 985, 993 (10th Cir. 1999). Defendants bear the burden of proof to demonstrate the errors were harmless. *R & R Sails, Inc. v. Ins. Co. of the State of Pennsylvania*, 673 F.3d 1240, 1246 (9th Cir. 2012)

It appears Defendants delayed the examination by Dr. Rosenberg and made the tactical decision to use him instead as a rebuttal expert. Because Plaintiff had previously agreed to submit to an examination by Dr. Rosenberg, the fact that Defendants intended to have him as an expert was not a surprise. In addition, the designation as an expert on December 19 was not a surprise to Plaintiff, because her counsel was informed of Defendants' intention prior to the disclosure.

Because the list of testimony was provided prior to the deposition of Dr. Rosenberg, and Plaintiff had an opportunity to question him regarding the bases for his opinions, it does not appear that Plaintiff has been prejudiced, but if there was any prejudice, it has been and can be cured. Likewise, the defendants chose to depose Dr. Rosenberg though refused to ask any questions that might explain his bases for his opinions and, when Dr. Roseberg attempted to explain, counsel refused to listen and cut him off.

At the hearing, counsel reported that the purpose of the deposition was not to obtain information that could be helpful to the plaintiff at trial but, to the contrary, to avoid gaining any information that would do so and to attempt only to obtain Dr. Rosenberg's admissions that the report was inadequate according to the requirements of Rule 26. The Court is at a loss to understand this tactic. There is no showing that Dr. Rosenberg has any expertise in determining the meaning of Rule 26 and, indeed, the only expert on the law in any courtroom, is not a witness but the court itself. Thus,

---

[2] Defendants do not even hint at any substantial justification for their conduct and the Court finds none.

the deposition that the plaintiff chose to take was a waste of resources and, clearly, was tactically minded. Rather than protect the plaintiff's interests, the deposition was carefully crafted to best promote the ability to strike the opponent's expert. This game-playing is prohibited by the rules and the spirit behind the rules and is not condoned. Thus, the Court finds that the prejudice, if any, the plaintiff suffers due to the Court's refusal to strike Dr. Rosenberg completely, is of her counsel's own making.

Likewise, the defense tactics designed to attempt to ignore the rules related to expert discovery by slipping in affirmative opinions in the guise of rebuttal evidence, also is not tolerated. Toward this end, the Court will strike the designation to the extent that Dr. Rosenberg offers affirmative opinions that exceed proper rebuttal evidence. As a result, allowing Dr. Rosenberg to testify at trial would not cause disruption to the proceedings or cause unfair prejudice to Plaintiff. Finally, the Court does not find Defendants have acted in bad faith, though it is a close call.

### V.      Conclusion

Defendants have failed to comply with the Federal Rules of Civil Procedure governing the timing and method of rebuttal disclosures. However, the Rule 37 factors weigh against a finding that sanctions should be imposed at this time. Defendants are cautioned that any future failure to comply with the Federal Rules of Civil Procedure or the Court's orders will result in sanctions up to and including the most harsh sort.   Accordingly, the Court **ORDERS:**

1.      Plaintiff's motion to strike is **GRANTED in PART** and **DENIED in PART** as follows:

    a.      The motion to strike the designation of Dr. Rosenberg in full is **DENIED**. However, Dr. Rosenberg's report will be limited only to strictly rebuttal opinions. Thus, his report is **STRICKEN** as to the following material:

        i.      "In Ms. Taylor's case, relevant medical conditions include her thyroid status, history of vitamin D deficiency and psoriasis, an inflammatory auto-immune disorder strongly associated with depressive symptoms" (Doc. 25-2 at 38);

        ii.     "In Ms. Taylor's case, relevant substance-related factors include whether she continues to take DHEA, an over-the-counter or prescription estrogen replacement, high-potency

topical steroids for her psoriasis, and her use of medical marijuana one to two times per day" (Doc. 25-2 at 38);

    iii. "The available medical records, in particular, the records of Toiyabe Indian Health, do not reasonably support a diagnosis of Major Depressive Disorder with regards to the type, severity or persistence of Ms. Taylor's claimed emotional symptoms" (Doc. 25-2 at 38);

    iv. "For example, the post-termination medical records indicate that plaintiff had only intermittent anxiety and depressed mood, and that her symptoms markedly improved once she had retained an attorney in this case" (Doc. 25-2 at 38);

    v. "And progress notes thereafter focus on other life issues, not symptoms of Major Depression or complaints related to Ms. Taylor's termination from Northern Inyo Hospital" (Doc. 25-2 at 38);

    vi. "Dr. Reading's evaluation does not reasonably take into account the issue of "mood swings" in the records, i.e., adequate consideration to the possibility of a Bipolar Disorder variant, unrelated to this case" (Doc. 25-2 at 38);

    vii. "Dr. Reading has not reasonably taken into account other relevant psychosocial stressors around the time period of her termination and thereafter, including plaintiff's family issues, ongoing gynecologic pain and dysfunction, the pain and disfigurement of her psoriasis, and other physical health conditions" (Doc. 25-2 at 39);

    viii. "Dr. Reading's treatment plan does not address any factors particular to Ms. Taylor, her background, medical history or characteristics of her hypothetical depressive disorder" (Doc. 25-2 at 39);

    ix. The entirety of Opinion 4 (Doc. 25-2 at 39-40).

IT IS SO ORDERED.

Dated: **February 17, 2017**      **/s/ Jennifer L. Thurston**
                  UNITED STATES MAGISTRATE JUDGE